**HEARTLAND PLYMOUTH COURT MI, LLC, d/b/a/ Heartland Health Care Center—Plymouth Court, Petitioner**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent.**

No. 15-1034
Consolidated with 15-1045
September Term, 2015

United States Court of Appeals, District of Columbia Circuit.

Filed On: May 3, 2016

Clifford H. Nelson, Jr., Constangy, Brooks & Smith, Atlanta, GA, Charles P. Roberts, III, Esquire, Constangy, Brooks & Smith, LLP, Winston–Salem, NC, for Petitioner.

Linda Dreeben, Deputy Associate General Counsel, Robert J. Englehart, Supervisory Attorney, Kellie J. Isbell, Attorney, John H. Ferguson, Associate General Counsel, National Labor Relations Board, (NLRB) Appellate and Supreme Court Litigation Branch, Washington, DC, for Respondent.

Before: Brown and Millett, Circuit Judges, and Ginsburg, Senior Circuit Judge.

### JUDGMENT

Per Curiam

This petition for review and cross-application for enforcement of an order of the National Labor Relations Board (Board) was considered on the record and the briefs of the parties. *See* FED. R. APP. 34(a)(2); D.C. CIR. R. 34(j). The court has accorded the issues full consideration and has determined they do not warrant a published opinion. *See* D.C. CIR. R. 36(d). For the reasons stated below, it is

**ORDERED** and **ADJUDGED** that the petition for review be **GRANTED** and the Board's cross-application for enforcement be **DENIED**.

Heartland Plymouth Court is a 109-bed healthcare facility that provides long-term care and rehabilitation for patients in Plymouth, Michigan. SEIU Healthcare Michigan ("the Union") represents a unit of some of the facility's full-time and part-time employees, including the dietary staff. In September 2011, in response to a lowered patient census, Heartland reduced and reallocated the hours of its dietary employees. Management and the Union held several meetings before the Union filed a grievance claiming Heartland violated their collective bargaining agreement (CBA) by reducing employee hours. The Union sought arbitration, and the arbitrator ruled for Heartland on all counts, finding the reduction violated no clause in the CBA. The Board reversed. After declining to defer to the arbitrator's decision, the Board applied its "clear and unmistakable waiver" doctrine to find Heartland had an obligation to bargain over the *effects* of its decision even though Heartland was free under the CBA to decide to reduce hours without bargaining.

As we have noted several times, there is a "fundamental and long-running disagreement" between this court and the Board as to the appropriate approach by which to determine "whether an employer has violated Section 8(a)(5) of the National Labor Relations Act when it refuses to bargain with its union over a subject allegedly contained in a collective bargaining agreement." *Enloe Med. Ctr. v. NLRB*, 433 F.3d 834, 835 (2005). The Board insists such questions turn on whether the Union "clearly and unmistakably" waived its bargaining rights on the subject through the CBA, but we have repeatedly held "the proper inquiry is simply whether the subject that is the focus of the dispute is 'covered by' the agreement." *Id.* at 838; *see, e.g., S. Nuclear Operating Co. v. NLRB*, 524 F.3d 1350, 1358 (D.C. Cir.

2008); *NLRB v. U.S. Postal Serv.*, 8 F.3d 832, 836 (D.C. Cir. 1993). Under our precedent, if a subject is covered by the contract, then the employer generally has no ongoing obligation to bargain with its employees about that subject during the life of the agreement. *See U.S. Postal Serv.*, 8 F.3d at 836-37.

Here, the Board refused to follow our controlling precedent and instead determined the Union had not clearly and unmistakably waived its right to bargain over the *effects* of Heartland's decision to reduce employee hours. *See Heartland–Plymouth Court MI, LLC*, 359 N.L.R.B. No. 155 (2013). The Board's refusal to adhere to our precedent dooms its decision before this court. *See Enloe*, 433 F.3d at 838 (noting that the "Board's implementation of its [clear and unmistakable waiver] policy is stalemated" by our precedent unless and until the Board seeks certiorari). We are free to interpret the contract's language *de novo*. *See id.* at 839 n. 4. In doing so here, we conclude the plain language of the CBA extinguishes the Union's right to bargain over the subject of employee hours—including any effects of an hourly reduction. The CBA's "Management Rights" clause vests Heartland with the right to "determine and change starting times, quitting times and shifts." J.A. 152. Moreover, "[i]t would be rather unusual ... to interpret a contract as granting an employer the unilateral right to make a particular decision but as reserving a union's right to bargain over the effects of that decision" without "some language or bargaining history to support the proposition that the parties intended to treat the issues separately." *Enloe*, 433 F.3d at 839. No such evidence is found here.

The Board undoubtedly erred under our precedent by refusing to apply our contract coverage approach to the parties' dispute—when the plain language of the CBA clearly authorizes Heartland to reduce hours without the need to bargain over the decision or its effects. Because application of the contract coverage rule resolves this case, we have no reason to reach the parties' arguments concerning the Board's decision not to defer to the arbitrator's interpretation of the CBA or whether the Board's remedy was appropriate. For the foregoing reasons, we grant the employer's petition for review and deny the Board's cross-application for enforcement.

Pursuant to D.C. Circuit Rule 36, this disposition will not be published. The Clerk is directed to withhold issuance of the mandate herein until seven days after resolution of any timely petition for rehearing or rehearing *en banc*. *See* Fed. R. App. P. 41(b); D.C. Cir. R. 41(a)(1).